No. 13,375.

W. J. McWilliams vs. H. M. Elder.

Syllabus.

Plaintiff, an employe of defendant, sued for compensation for services rendered in the management of her business. For the first two months of the service, there was no written contract. Defendant only assured plaintiff that he would not lose anything by abandoning the practice of his profession and taking charge of her business. At the end of two months, a contract was entered into between these parties in which the profits to be made in a store were to be considered as the equivalent for some, perhaps all of plaintiff's services.

Held: (1) That as the contract did not fix the whole of compensation plaintiff was to receive, proof admitted without objection was properly before the court as in a case brought to fix the value of the compensation;

(2) That there was no profit made in the store in question, and, therefore, plaintiff could recover nothing therefrom;

(3) That the plaintiff was entitled to the value of his services to the date of his discharge, even if he was discharged for cause;

(4) That the defendant employed plaintiff individually, and not as legal representative of the succession of her late husband;

(5) That there was no partnership between plaintiff and defendant;

(6) That plaintiff is not entitled to an amendment of his judgment increasing the amount heretofore decreed as due him.

APPEAL from the Fifth Judicial District, Parish of Ouachita—*Potts, J.*

*E. T. Lamkin* and *Madison & Madison* for Plaintiff, Appellee.

*Hudson, Potts & Bernstein* for Defendant, Appellant.

The opinion of the court was delivered by

BREAUX, J. Defendant appeals from a judgment condemning her to pay the sum of one thousand and sixty-three 62-100 dollars to the plaintiff, subject to a credit of one hundred and sixty-two 96-100 dollars.

Plaintiff answered defendant's petition for an appeal, and asked for an amendment increasing the judgment to the amount claimed in his petition. Plaintiff, in his petition addressed to the District Court for a judgment, sets out that, shortly after the death of defendant's husband, Moses Elder, in 1897, the defendant employed him to manage the business of the succession of her late husband; that about the first day of February, 1898, the defendant, in addition to the services before referred to, employed him to manage the business of a small country store at or near her plantation, of which business he took charge and control, and continued in charge until about the fourteenth day of August, 1898, when defendant, without cause, took charge of the business and placed another in his place. He states that he, in compliance with defendant's request, gave up a profitable practice as a physician and devoted his time and attention to the business with which he was entrusted by the defendant, and that defendant promised him when he abandoned his practice at her instance, that he would not thereby be a loser; that his practice was worth about fifteen hundred dollars a year to him. He avers that he was not employed under any special contract, so far as relates to compensation, but that his services were well worth the amount he claims.

McWilliams vs. Elder.

He, also, avers that the assets of the store amounted to thirteen thousand and seventy-nine 66-100 dollars at the time he was discharged and its liabilities to seven thousand and twenty-three 9-100 dollars. Plaintiff, under the agreement with defendant, claims a half interest in the DeSiard store and one-half of the profits of the mercantile business as a part consideration for his services.

He admits that he withdrew five hundred and seven 96-100 dollars from the business, and that he put in the business the sum of three hundred and forty-four 4-100 dollars. He charges that by defendant's illegal discharge, he was left without a home and without occupation, as he had been induced by defendant to abandon his profession, for which he claims damages in amount alleged in his petition.

Plaintiff, in the alternative alleged, if the court finds that he was a partner of defendant, then there should be a partnership settlement ordered, the share of each being fixed. Defendant before filing her answer, filed an exception of no cause of action, which was overruled by the court. She then filed her answer, denying the allegations of plaintiff's petition, save those which she specially admitted. She admitted, in her answer, that after the death of her husband, that is from December 1st, 1897, to February 1st, 1898, she employed plaintiff to look after the succession business of her husband, and she alleged that if anything is due to plaintiff, it is due by the succession and not by her.

She admits that she entered into a contract in writing with plaintiff, and that it stipulated that for the management of her planting business during the year 1898, plaintiff was to receive one-half of the net profits of the store known as the DeSiard store, which was a plantation store doing a general furnishing business.

She sets out, that when suit was filed against her, the crop on her plantation had not yet all been gathered. She particularly complains of plaintiff's management; that it was reckless, extravagant and unusual; that it was impossible to collect the accounts due the store, the crops not being enough to pay, and the debtors, who were nearly all hands on her places, had nothing else with which to pay; that there were no profits to divide with plaintiff; that the plaintiff insisted upon making large debts, and refused to consult with her in regard to the business to such an extent that she was compelled to discharge him from her employ to avoid the bankruptcy of her entire estate. These are the pleadings.

As relates to the facts, they are: The contract between the parties did not cover all the terms of their agreement. Plaintiff testifies that in compensation for his services, he was to receive no less than one-half in complete ownership of the stock of the store known as the De-Siard store, that the expenses in conducting the business were to be taken from the revenues of the store, and all the goods purchased were to be paid for in the same way. Defendant's attorney, on the other hand, testified that plaintiff complained to him about the loss of the instrument or contract he had signed and entered into with defendant; that several months prior to this complaint about the loss of the contract, he had called on him, the attorney, and asked him to read the contract, which he did read, and he found that under its terms, plaintiff was not entitled to one-half the stock in the store, but to one-half of the net proceeds. He, the attorney, so informed the plaintiff, who then sought to modify the contract in accordance with what he conceived to be the rights of the respective parties thereto. He called on the defendant and requested her approval to the modifications, which she positively refused.

Matters remained in that situation. Suit was brought on the lost contract, and the terms were proven by secondary evidence. It appears that the compensation was not expressly stipulated, or, at any rate, that the contract did not clearly define how much plaintiff was to receive for his services. She bought the DeSiard store from the succession of her husband in January, 1898, for which she paid twelve hundred dollars.

Plaintiff had charge of her (defendant's) business before and after she had bought this store. About the 15th of August, 1898, plaintiff was not permitted to continue with the management of the store, and he, at the instance of the defendant, was succeeded by another employe of the defendant.

Defendant became displeased with plaintiff's management, because, she testified, he bought too many goods and other property, because he sold too much on credit, and made advances to the hands on defendant's plantation to an extent beyond her approval; because he did not confer with her as he should have done; and because he did not give her sufficient information regarding the details of the business.

Plaintiff testified in his defense, as relates to this complaint, that the defendant had empowered him to superintend and manage her business; that while he had given her every necessary account, he did not

deem it necessary to consult her every time he saw proper to buy goods, or other things necessary to keep up the business of the store, or the planting operations; that she had said to him in the beginning, that it was not necessary to consult her, as she did not know anything about goods.

Plaintiff, in addition to his demand for the value of the services rendered, claimed damages on the ground that at plaintiff's insistence, he had given up a paying clientelle as a physician, which he had abandoned on the defendant's promise that he would be amply paid.

Plaintiff, in support of his claim based on the asserted interest in the store, filed a statement from an inventory and statement made about the time he left the service of the defendant.

This statement shows:

| | | |
|---|---|---:|
| By accounts from February 1st to August 15th | | $8,205 85 |
| Inventory | | 4,093 54 |
| Cash from store bills paid | | 361 98 |
| Dr. W. J. McWilliams, account | | 507 96 |
| Mrs. H. H. Widers | | 272 31 |
| | | $13,441 64 |
| Liabilities | | 8,333 48 |
| | | $5,108 16 |

The goods in the store purchased January 18th, 1898, should, also, be deducted from this balance.

This balance covers amounts due by the tenants and others not considered accounts of any value. The bookkeeper of the defendant, who had charge of the store and the books, after plaintiff left, testified that the business of the store in 1898 had not resulted in any profit.

The general superintendent, who succeeded the plaintiff, testified to the same effect. Plaintiff, himself, as a witness, did not fix any amount whatever as a profit.

Upon these issues the judge of the District Court pronounced judgment for plaintiff, for the sum of one thousand and sixty-three 62-100 dollars, with interest, less one hundred and sixty-two 96-100 dollars.

With reference to the statement just referred to, the judge found that on the fifteenth day of August, 1898, the date on which plaintiff

was discharged, the store had made no profit, and that it was about the same with the business at the end of the year 1898, in other words that no profit was made in the store in question that year.

Defendant and appellant assails, in the first place, the judgment of the District Court on the ground that the suit was brought on a contract, but that the judgment rendered by that court was based on a *quantum meruit*.

We have not found that the suit was brought exclusively on a contract. Petitioner avers that he had "no special contract with defendant" as to the compensation he should receive.

Evidence of the value of the services rendered was admitted without objection. It is quite true that, ordinarily, where the evidence shows that the action is based on a contract, plaintiff cannot recover on a *quantum meruit*. But the rule is not conclusive where one sues on a contract setting forth the nature of the services to be rendered and is silent regarding the value of the services. There can be no question regarding the first two months of plaintiff's services as an employe of the defendant. He was employed, and the amount of his compensation was not fixed. About the first of the third month after plaintiff had been employed, defendant agreed to divide with plaintiff the net profits of the store. A question arose as to whether this was to be in compensation for all of plaintiff's services or was only in compensation for his services in the matter of the business of the store. We are informed that plaintiff, until the fifteenth of August, had charge of all defendant's business, to-wit: business of the store and general superintendence of the different plantations.

Be it as it may as to whether plaintiff was to receive as compensation for all his services only one-half of the net proceeds of the store, or whether he was to receive other compensation for services other than those connected with the store, it remains that defendant discharged plaintiff, and that it was no longer possible for him to continue in his employment. Plaintiff having been prevented by defendant from completing his contract, he should recover the value of his services to the date of his discharge. Even if defendant had cause to discharge the plaintiff, he was entitled to his salary up to the date of his discharge. The case of Lambert vs. King, 12th Ann., 662, is in point. The court, in that case, held that the plaintiff was justified in dismissing the defendant from her services, but that the defendant was entitled to a fair remuneration for said services up to the time

of his discharge, in estimating which, reference should be had to the stipulations of the contract.

With reference to defendant's denial of any responsibility to plaintiff, as she asserts, for the reason that the plaintiff was employed to look after the succession of her husband, we can only say that, in our view, this contention is not borne out by the facts. The property belonged, as we take it, to the community of which defendant owned one-half in her own right, and she had the usufruct of the other half. She, it appears, transacted with plaintiff in her own name to look after the affairs of this large estate, amounting to more than one hundred thousand dollars. She was the legal representative of the succession, but he was her employe individually. She could not, in view of the facts, shift the responsibility of the compensation from herself, and compel him to seek payment from the succession.

We have before stated that the DeSiard store in which plaintiff had a half interest in the profits made no profits in 1898; this renders it unnecessary to pass upon the question as to whether a partnership existed. We have, none the less, considered the question of partnership and found that there was no partnership for the reason that one does not enter into a partnership with his employer by the latter's allowing him a portion of the profits in compensation for his services. Miller vs. Chandler, 29th Ann., 88.

We pass to the decision of the last and only remaining question, arising on the application of the plaintiff made here in the answer to the appeal for an amendment of the judgment increasing the judgment of the lower court. We do not find, either in the pleadings or in the evidence, good ground to grant this demand. The compensation heretofore allowed is ample for all services rendered.

In our view, this view of the law on the point raised does justice to both parties. We think that nine hundred dollars with interest, the balance allowed in the judgment of the lower court, is not excessive.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be affirmed at appellant's costs.

Rehearing refused.